James O. Shackelford, J.,
delivered the opinion of the Court.
It appears from the record, the complainant, in February, 1869, was appointed the Commissioner of Registration of voters for the county of Shelby, by W. G. Brownlow, the Governor of the State. He entered *487 upon the duties of the office, and continued in the discharge of the same, until the 19th of June, 1869, when he was removed by the Governor of the State, D. W. C. Senter, and the defendant, John P. Boughner, was appointed and duly commissioned a Commissioner of Registration of voters of Shelby County. He applied for the books and papers pertaining to the office; the complainant refused to deliver them; and this bill was filed in the Chancery Court at Memphis, to enjoin and restrain Boughner from the exercise of the duties of the office. Complainant alleges in his bill that he is still the Register; that no power exists in the Governor to remove him; that it can only be done by the judgment of a court of competent jurisdiction; that the Act of the 27th of February, 1868, giving the power to the Governor to remove, is unconstitutional and void. The defendant, Boughner, was notified of the application for an injunction. He appeared in Court, and by his counsel resisted the motion. The Chancellor was of the opinion the Governor had no power, under the Constitution and laws of the State, to make the removal, and awarded the injunction.
The present proceeding is an application to this Court to reverse the order of the Chancellor, and for a supersedeas under the provisions of sec. 3933, of the Code, which confers the power upon the Supreme Court in term time, or upon either of the judges in vacation, to grant writs of supersedeas to interlocutory orders, that may be rendered by inferior courts. The action of the Chancellor presents the question of the power of the Governor, under the Constitution and laws of the. *488 State, to remove from office an incumbent, where no tenure of office has been fixed by law, and the power of appointment to the office has been vested in the Governor.
The question is one of grave importance and pressed as we are with the accumulated labors of a long and laborious term, which is about drawing to a close, we have not the time to give at length the reasons for arriving at our conclusions, but will briefly state the points involved, and the principles controlling our action. It becomes necessary to notice the several Acts of the Legislature passed upon this subject. The first was an Act to limit the Elective Franchise passed June 5th, 1865. By this Act the clerks of the County Court were ordered to open books and keep a registration of voters, before whom proof was to be made of the qualification of voters, for which they were to receive such compensation for their services as the County Courts may deem proper. This Act was altered and amended by the Act of May 3d, 1866. By the second section of this Act, the Governor of the State was authorized, and it was made his duty, within sixty days, to appoint a Commissioner of Registration in each and every county in the State, who shall, without delay, enter upon the discharge of his duties; and full power was given him to administer oaths, etc. He was required to keep his office at the county seat; to hear proof required by the Act, of the qualification of voters, and to register the name of each and every qualified voter, and issue a certificate to all who are entitled to the elective franchise. Other powers were conferred *489 upon the Commissioner under this Act, which it is unnecessary to notice.
The Act of May 3d, 1866, was amended and altered by the Act of 25th February, 1867. These same provisions are embraced in this Act, relative to the appointment of Commissioners of Registration, as were given in the Act of May 3d, 1866; and the powers of appointment were vested in the Governor; the duties of the officer were enlarged; and a compensation of one hundred dollars was allowed the Register for his services.
An Act was passed 26th February, 1868. By- the second section of that Act, the act of the Governor, in removing and appointing Commissioners of Registration was legalized, and the power was conferred upon him to remove, for dereliction of duty, fraud or other irregularities, and to appoint others.
It will be seen from an examination of the several Acts passed upon this subject, that no tenure of office was fixed by law, and that the power of appointment was vested solely in the Governor of the State.
What is the legal effect of this power of appointment, when no tenure of office is fixed by the Constitution or laws of the State? Does the officer appointed hold the office during good behavior, (which is the same thing in contemplation of law,) during his life, or is it to be held at the will and discretion of the appointing power, and subject to removal at pleasure? It is insisted, under the Constitution and laws of the State, the Governor has no power of removal, consequently the Commissioner held his office during *490 good behavior, unless be is removed by the judgment or decree of some court, as pi’ovided in sec. 5, of article 5, of tbe Constitution of the State.
This question has not been before this Court, that we are aware of, but has been before the Supreme Court of the United States and some of the courts of the different States; and has been settled by the practice and usages of the government of the United States, for more than half a century. The provisions of the fourth section of article second, of the Constitution of the United States, is, in effect, similar to the fifth section of article fifth in our Constitution, relative to the removal of officers for crimes and misdemeanors. Our Constitution, and the Constitution of the United States, is silent with respect to the removal of officers, when the tenure is not fixed, except for crimes and misdemeanors. The Constitution of the State provides for the tenure of Judges, Attorneys-general, Clerks, Sheriffs, Justices of' the Peace, and other officers therein specified; consequently, they hold their offices for the periods therein fixed, unless removed by due process of law. It cannot be admitted, under our Constitution, that where no tenure is fixed, the person appointed and filling the office, should hold it during good behavior. This question came before the Supreme Court of the United States, in the case of exparte Hennen, and reported in 13 Peters, 256. The case was: The clerk of a District Court of the United States had been removed from office by the presiding judge; it was held, there being no tenure of office fixed by law, that the power of removal existed — that the powef of appoint *491 ment necessarily involved tbe power of removal. Tbe same power of removal is vested in tbe President of tbe United States, where the power of appointment is given him. This has been often exercised and acted upon by him: In the case of Aaron Goodrich, who was appointed by General Taylor, then President, ' Chief Justice of the Territory of Minnesota. He was removed by Mr. Fillmore, the President of the United States, and his action was sustained by the courts. In the case of Avery against the inhabitants of Tyringham, 3 Mass., 177, it was settled as a general rule, that an office is held at the will of either party, unless a different tenure is expressed in the appointment, and the power of removal was recognized. In the case of Le-man vs. Sutherland, 3 Sergeant & Rawle, 145, the question in that case turned upon the construction, and laws of Pennsylvania. By the Constitution of that State, it was provided, the Governor shall appoint all officers, whose office is established by law, and whose appointments are not otherwise provided for.
The Court says: “The Constitution is silent as to the removal of officers, yet it has been generally supposed the power of removal rested with the Governor, except in those cases where the tenure was during good behavior.” In sec. 1537, of Story’s Commentaries on the Constitution, he says: “It is observable that the Constitution makes no mention of any power of removal by the Executive, of any officer whatever. As however, the tenure of no officers except those in the judicial department, is, by the Constitution, provided to be during good behavior, it follows, by an irresistible inference, *492 that all others must hold their office during pleasure, unless Congress shall have given some other duration to their office.”
The Act of the 26th of February, 1868, conferring upon the Governor the power to remove for dereliction of duty, fraud, or other irregularities, does not limit and control the power of the Governor in removing, for these causes alone. It was not designed or intended by the Legislature, that he should hear proof and determine as a judicial officer, whether the appointees were guilty of fraud or dereliction of duty, and to restrain the power of removal vested in him under the settled rules of law.
We are satisfied upon principle and authority, that there being no tenure of office fixed for the Commissioner of Registration, and the power of appointment having been vested in the Governor of the State, for filling said office, the law vested in him the power of removal, and that he holds his office at the will and pleasure of the Governor of the State.
It follows, therefore, the interlocutory order of the Chancellor granting an injunction, was erroneous and must be superseded. The Clerk of this Court will issue a supersedeas, as provided in sec. 3934 of the Code.